# *Law Offices of*
# *Daniel A. Hochheiser*

ATTORNEY AT LAW
2 Overhill Road, Suite 400
Scarsdale, New York 10583
dah@hochheiser.com
(646) 863-4246

May 15, 2024

<u>Via ECF</u>
Hon. Kenneth M. Karas
Southern District of New York
United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

Re:   *USA v. Justice Jackson*, 22 CR 47 (KMK)
      <u>SENTENCE MEMORANDUM</u>

Your Honor:

**I.     DEFENSE SENTENCE REQUEST**

Justice Jackson requests a variance in the form of a sentence of time served (28 months) to run concurrent with the sentence imposed on Count 1 of Indictment 22 CR 641 (PMH). The sentence proceeding before Judge Halpern is scheduled for May 28, 2024. "The parties stipulate that the factual basis supporting Count Two of the 22 Cr. 47 Indictment is relevant conduct to Count One of the 22 Cr. 641 Indictment under U.S.S.G. §lBl.3." Plea Agreement at 3. PSR ¶¶8, 104. "The offense of conviction is considered relevant conduct to Count 1 of Indictment 22CR641(PMH); therefore, it is recommended that the sentence in this case be imposed concurrently." PSR page 30. Justice was arrested on December 22, 2021. A time-served sentence would consequently amount to a sentence of approximately 28 months. While this proposed sentence would run concurrently to Count 1 of Indictment 22 CR 641, Justice would still have to serve a consecutive, mandatory, minimum, 10-year, prison sentence on Count 3 (§924(c) discharge) of Indictment 22 CR 641. The global plea agreement provides in relevant part:

> Count Three of the 22 Cr. 641 Indictment charges the defendant with discharging a firearm during and in relation to a crime of violence, and aiding and abetting the same, to wit, the attempted murder and assault with a dangerous weapon in aid of racketeering, as charged in Count Two of the 22 Cr. 641 Indictment, in violation of Title 18, United States Code, Sections 924(c)(l)(A)(i), (ii), (iii) and 2. Count Three carries a maximum sentence of life imprisonment; a mandatory minimum sentence of *ten years' imprisonment*, which is to run *consecutively* to any other term of imprisonment imposed… (italics added).

1

Accordingly, a sentence of 28 months (time served) would constitute a sentence "sufficient but not greater than necessary" to satisfy the purposes of sentencing. 18 USC §3553(a). Whether the Court sentences Justice within the Guidelines range of 51 to 63 months, 42 months as recommended by Probation, or to the proposed 28 months proposed by the defense will make little, if any, practical difference provided the Court finds Count Two of the 22 Cr. 47 Indictment relevant conduct to Count One of the 22 Cr. 641 Indictment under U.S.S.G. §1B1.3 and consequently runs the sentence concurrent.

The proposed sentence would constitute a sentence "sufficient but not greater than necessary" to satisfy the purposes of sentencing. 18 USC §3553(a). A sentence of 28 months (time served) would: (i) be a reasonable variance, (ii) account for Justice's role in the robbery, (iii) acknowledge that Justice will be serving at least 10 years for his related conduct of participating in a racketeering conspiracy including aiding and abetting the discharge of a firearm in connection with an attempted murder. Such sentence would also, balance the mitigating factors of Justice's (a) childhood marked by poverty, neglect, domestic violence and a crime-ridden neighborhood, (b) loss of his father's guidance (c) young age (19 years old) at the time of the robbery (d) positive post-arrest conduct, (e) prompt acceptance of responsibility, (f) acknowledge the continued support he has from relatives and friends, and account for (g) the hard time he has already served.

## II.   BACKGROUND

For a detailed account of Justice's history, please see the January 24, 2024, mitigation report, by Court Consultation Services. ECF 153, 153-1 filed in 22 CR 641 PMH. This report will be referred to as "the mitigation report".

Justice was arrested on the instant Hobbs Act robbery case on December 22, 2021 (22 CR 47 KMK) which is relevant conduct to the racketeering case, pending sentence before Judge Halpern, for which he made his initial appearance on December 14, 2022. At the time of his arrest on the robbery case, Jackson was 19 years old. During the period of Justice's participation in the Racketeering Conspiracy (2018 – 2021) he was 16 to 19 years old[1]. At the time of sentence scheduled for May 29, 2024, Jackson will be almost 22 years old. He has been incarcerated for approximately 28 months in his two related cases pending in this courthouse. *U.S. v. Ward*, *et al.*, 22 CR 47 KMK. *U.S. v. Williams*, *et al.*, 22 CR 641 PMH.

> Justice Jackson is a twenty-one-year-old young man from the City of Newburgh, New York. When Justice was only two years of age, his father, Anthony Rashad Jackson was shot and killed while sitting on his aunt's porch. His mother, Nakia Nolcox, at the time of the shooting, had five children and was pregnant with her

---

[1] "As we know brain maturations continues well into ones mid-twenties. Justice was clearly in the lower end of the process when the instant offense occurred." *See*, the mitigation report at 14. *Also see,* The Anxious Generation at 5, J.Haidt (Penguin Press 2024)[ "While the reward-seeking parts of the brain mature earlier, the frontal cortex – essential for self control, delay of gratification, and resistance to temptation – is not up to full capacity until the mid-20s…"].

sixth child. Nakia Nolcox suffered from a very traumatic childhood. She was ill-equipped to prepare her children for their life ahead. *See* the mitigation report at 1.

Justice was born into a family with a history of teen pregnancy, drug addiction, violence, sexual abuse, suicide attempts, instability, and chaos. Justice was the fourth of five sons born to Nakia Nolcox. He was born on          2002. On August 17, 2004, Justice's father ("Rashad") was shot and killed in Newburgh. Justice lost his father as a two-year-old toddler. He has no memory of his dad. The murder not only eliminated Justice's father, but also profoundly affected his mother's mental capacity to care for her five sons and her daughter -- born shortly after Rashad's murder. Justice's mother was rarely home as she was always working and often went out at night. She worked at Walmart and as a nurse when Justice was a child. She left him to be "watched" by older cousins. During his childhood there were times when the family did not have enough food and "on occasion, the lights would go off, but then his mother would immediately pay the electric bill." PSR ¶116. At times, Nakia acted as a peer to her children instead of as their mother. She would drink and smoke with her children. After Rashad's death, Nakia's relationships with men brought intoxication and domestic violence into Justice's household. Justice was exposed to violence inside his home. And to an even greater extent, he was affected by exposure to frequent, severe, violence outside his home. Justice grew up in a terrible neighborhood in Newburgh where there were frequent shootings between members of rival gangs.

> Jackson described his childhood neighborhood as violent. Prior to the instant incarceration, he has witnessed at least thirteen shootings, and he recounted some of the incidents, as follows. When Jackson was 8 or 9 years of age, "Sam" was shot on his street (South Miller Street in Newburgh) while his mother was sitting on the porch. Jackson's mother tried to help the injured individual and instructed the children to fetch towels. When Jackson was age 13, an older man in the neighborhood was shot on Liberty Street in Newburgh. At the age of 15, while sitting on his porch, Jackson witnessed his neighbor get shot during a drive by shooting. PSR ¶118.

Justice's maternal grandmother, a positive influence in his life, died "unexpectedly of cardiac issues" when Justice was only 10. At age 12, two years after the passing of his grandmother, Justice was adjudicated a Juvenile Delinquent by the Orange County Family Court for a burglary for which he was sentenced to a conditional discharge. PSR ¶101. He did not succeed in school.

> Justice had learning disabilities and did not excel in school. Academics became a source of frustration and disappointment in his life. Coupled with the chaos at home, he had little opportunity to overcome his educational challenges. The mitigation report at 14.

He was expelled from the Newburgh Free Academy in the ninth grade. His expulsion followed his argument with a school security officer during an altercation between his female cousin and a third party. PSR ¶127. Twenty-two days after the incident in school, Justice tried returning to school but was not permitted to continue attending ninth grade. His loss of his place in school

3

was exacerbated by additional loss of family. In 2018, when Justice was 15 years old, his Aunt Esther passed away. Her passing constituted the loss of another positive influence in his life. After the passing of Esther, Justice's situation as a teenager continued to deteriorate.

> The use of drugs was normalized both in the home and the surrounding environment. Justice started smoking marijuana from the time he was very young and by the time he was sixteen or seventeen was smoking on a daily basis. By eighteen he was abusing "Lean"… *See*, the mitigation report at 10.

He also abused Percocet pills. Apparently, Justice used drugs as a teenager to "cope with trauma and stressors." At 18 years old, he was adjudicated a youthful offender for a criminal mischief case and was sentenced to a conditional discharge. Also, at age 18, Justice lost his 22-year-old, friend, Amari Edwards, who was shot and killed. PSR ¶119. Justice cried for a week after Amari's death. As a 19-year-old, on October 6, 2021, a couple of months before his arrest by the feds, Justice was arrested for a state gun case in Orange County. He pleaded guilty in the Orange County case; his sentence is pending. PSR ¶103.

Justice pleaded guilty in the instant case on December 1, 2023 before U.S. Mag. Judge Victoria Reznik. Your Honor accepted the guilty plea by Order on January 8, 2024. ECF 65.

Growing up without a father and left with a neglectful mother, who was overwhelmed trying to raise six kids by herself in an environment of poverty, violence, drugs and instability, Justice was tragically, but not surprisingly, drawn into the ambit of a street gang. His involvement in the gang inevitably led to his arrest, conviction, incarceration, and imminent sentencing to a mandatory minimum of 10 years in federal prison. Because "…his father was not there to teach him to ride a bicycle, change a tire, secure employment and/or stay off the streets…the older guys on the streets became [his] father." PSR ¶112 (internal quotations omitted).

Justice's story began as a two-year-old when his father was murdered and culminated in his federal arrest as a 19-year-old. The story of Justice's young life is an unfortunate, all-too-common one in which a young, black man grows up without a father, in a crime-ridden environment, like Newburgh, and is then drawn into the streets where the gang becomes his parent, crime become his meal ticket, and prison becomes his logical destination. Counsel acknowledges that some of Justice's siblings did not succumb to the lure of the streets of Newburgh. Justice did, however, perhaps because of his position in the family as the youngest of five boys who looked up to his older brother Messiah who is a co-defendant in the related racketeering case.

Justice's post-arrest conduct has been exemplary with one exception. PSR ¶62. Counsel's qualification of his post-arrest conduct is made only in-light-of an isolated, minor, disciplinary incident at the Hudson Jail for which Justice served five days in the special housing unit. Overall, Justice has behaved well and done better than most inmates faced with navigating through difficult, dangerous, jail conditions for more than two years.

### III.  HARSH CONDITIONS

Justice has been incarcerated at Hudson Jail in Kearny, New Jersey for 28 months. He has been subjected to harsh conditions including only being allowed outside twice per week during periods of his incarceration. His participation in GED classes ended because the jail stopped providing the classes. The time Justice served includes hard time served during the Covid-19 pandemic. This includes a recent spike in the virus at the jail as recently as December 2023 which caused the cancellation of "All non-essential services, like educational, life skills, and community reintegration programming…[2]" Justice has suffered harsh conditions in the form of lack of programming, lack of educational opportunities and limited movement, in part, driven by Covid-19 protocols. Justice did not get a contact visit from his mother for almost two years as a result of Covid visitation restrictions. ECF 152-1 filed in 22 CR 641(PMH).

The Court has authority to grant leniency at sentencing based upon harsh conditions suffered during pre-trial confinement. *See*, *USA v. Stubbs*, 19 CR 276 (NSR)(ECF 68). Courts in this circuit have granted sentence reductions for harsh conditions of pre-trial confinement. *See*, *United States v. Sanchez-Reyes*, 19 Cr. 502 (DLC); *United States v. McRae*, 17 Cr. 643 (PAE); *United States v. Guagliardo*, 20 Cr. 23 (DLC); *United States v. Hengy*, 19 Cr. 120 (CS); *United States v. Bryon*, 19 Cr. 700 (VB); *United States v. Marmolejos*, 19 Cr. 626 (PAE); *United States v. Nash*, 20 CR 327 (VB). Harsh conditions (related to the Covid-19 pandemic) suffered during incarceration at the Hudson Jail and other jails in the metropolitan NYC area may be considered in the Court's analysis of the 3553(a) factors. *United States v. Lawrence*, 2024 U.S. Dist. LEXIS 77892, at *13 [20-CR-293, E.D.N.Y., Apr. 25, 2024].

Like other defendants, who have received leniency due to harsh pre-trial confinement conditions, Justice also deserves leniency commensurate with the hard time served.

### IV.  RECOMMENDATION OF PROBATION

Probation recommends a sentence of 42 months to run concurrent to Count 1 of Indictment 22CR641 PMH. This sentence would be a sentence greater than necessary to satisfy the purposes of sentencing. The purposes of sentencing are to: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

Given Justice's timely acceptance of responsibility, positive post-arrest conduct, bleak childhood circumstances, lack of guidance, his young age at time of the offense, his community support, and his future potential, a sentence of 28 months (time served) rather than 42 months would be a sentence sufficient, but not greater than necessary to satisfy the purposes of the sentencing statute. Balancing the various factors at play in this case, a sentence of 28 months is

---

[2] https://www.nj.com/hudson/2023/12/covid-19-on-rise-again-in-hudson-dozens-of-cases-force-shutdown-of-programs-at-county-jail.html&subscribed=auth0%7C6637cc9b13a26147ac57e117

appropriate given that it would be Jackson's first custodial sentence and would also be a sentence dwarfed by the 10-year, consecutive, mandatory-minimum sentence to be imposed on his related racketeering case. Imposing a concurrent sentence here would serve the objectives of the sentence statute without foreclosing a young man's hope to salvage the future. Given his sentence exposure on the racketeering case, counsel expects Justice to be incarcerated **at least** until or close to his 30th birthday. Justice, however, could be incarcerated for many years beyond his 30th birthday given his Guidelines range in the racketeering case which is 355 to 413 months. The government and probation have recommended 240 months (20 years) on the racketeering case. After serving his sentences on his two federal cases and on his pending state case, "Jackson would like to own a landscaping company; he enjoys the outdoors, being active and performing labor-type work." PSR ¶124.

## V.    THE STATUTORY FACTORS

The sentencing statute, 18 USC §3553(a) sets forth the factors "to be considered in imposing a sentence." Since the Supreme Court decision in *U.S. v. Booker*, 543 U.S. 220 (2005), the United States Sentencing Guidelines are no longer mandatory and now are only advisory. The Guidelines may be a starting point for federal sentencing courts, but in the post-*Booker* world, the Guidelines are merely one of various factors to be considered before imposition of sentence. *U.S. v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Moreover, the parsimony clause of §3553(a) requires a sentencing court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)…" The parsimony clause dictates that in the event a sentencing court concludes that two sentences equally serve the statutory purposes of §3553(a), the court cannot, consistent with the parsimony clause, impose the higher sentence. *U.S. v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006). "The court, in determining the particular sentence to be imposed, shall consider" seven enumerated factors:

(1) <u>The nature and circumstances of offense and the history and characteristics of defendant</u>

### *Nature and Circumstances of Offense*

Justice's conduct in the instant matter is related conduct to his participation in the street gang known as the "Double Nine Grim Reapers" aka "Grimz". *See* ECF 154 filed in 22 CR 641 (PMH). Grimz is an enterprise that engaged in various violent and non-violent crimes through a pattern of racketeering activity in Newburgh and elsewhere. Jackson, in the instant offense, participated in a plan to rob a drug dealer at a home in Newburgh. He and his accomplices at gun point, used violence and threats of violence to take property from the occupants of the home where the drug dealer used to live. Justice accepted responsibility for his role in these crimes during his guilty plea allocution.

> Concerning Count 2 of Indictment 22CR47, on December 18, 2021, I participated with others in a plan to rob a drug dealer at a residence on Liberty Street in Newburgh, New York, in the Southern District of New York. I participated, and aided and abetted others, in the gunpoint robbery of occupants inside the residence of property by using violence and threats of violence. I knew using

> violence and threats of violence to take property from occupants of the residence was illegal and wrong. I am sorry and I regret my criminal conduct. PSR ¶86.

The crime Justice committed with others was without a doubt a serious, dangerous crime which is not excused, but is mitigated, to an extent, by his young age.

### *History and Characteristics of Defendant*

The Court may consider Justice's young age at the time of his crime, lack of guidance, lack of education, substance abuse history, positive post-arrest conduct, harsh conditions, and support from family and friends in considering a measure of leniency at sentence. Justice's mother writes about his personal history.

> I was pregnant with justice in the year 2002 he was born on            he is the youngest of my sons he was such a happy baby it's unfortunate at the age of two my children's father was sadly taking from us due to a unfortunate act of violence during which time i was pregnant with our youngest daughter who never had the chance to meet him Justice really enjoyed fishing and playing sports he played football for Newburgh pop warner anss (sic) Basketball for the Newburgh zion lions between the ages 6 to 16 justice has 6 siblings which they all get along pretty well as much as siblings do they have tight bonds with one another. ECF 152-1 filed in 22 CR 641(PMH).

His great aunt, Sheila Jackson describes Justice's good characteristics. "Justice was always a kind, caring and loveable young man, willing to lend a hand with everything at our family gatherings. He has the most beautiful smile that touched everyone's heart to want to love him even more." *Id.* For a robust account of the history and characteristics of Justice, please see the mitigation report. ECF 153, 153-1 filed in 22 CR 641 PMH.

(2) <u>The need for the sentence imposed</u>

A sentence of 28 months would: reflect the seriousness of the offenses, promote respect for the law, provide just punishment for his crime for which mitigation exists, afford adequate deterrence, *specifically* to Jackson who has been and will continue to be incarcerated after sentence given his 10-year, consecutive, mandatory-minimum, prison sentence he must serve on his racketeering case, and *generally* to the public which will receive a clear signal that participating in a gun-point robbery will be met with significant prison time, protect the public from further crimes of the defendant, who would likely be in at least in his 30s upon release on his related case, and the proposed sentence would "provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner." The concurrent sentence proposed would serve all the purposes of sentencing particularly in the context of the related federal sentence.

(3) <u>The kinds of sentences available</u>

A prison sentence which accounts for the mitigating factors is warranted. A term of supervised release would serve as an insurance policy against future recidivism and would foster

7

Justice's successful transition from prison to law-abiding life. Supervised Release specifically could ensure that Jackson maintains employment, stays away from drugs and bad actors in the streets. The term of Supervised Release should run concurrent to any term of Supervised Release imposed in the related case 22 CR 641 (PMH).

(4) <u>The Guidelines Sentence Range</u>

The Guidelines range is 51 to 63 months. A Guidelines sentence here is unnecessary. Imposition of such a sentence would accomplish nothing above and beyond what a lesser sentence would accomplish given that the instant offense is relevant conduct to the related racketeering case.

(5) <u>Pertinent policy statements by Sentence Commission</u>

The Commission has issued amendments to the Guidelines along with policy statements concerning the treatment of the age of a defendant as a factor deserving consideration of a lesser sentence. The Court may consider the Commission's policy statement for Guidelines Amendment **§5H1.1** in considering an appropriate variance from the Guidelines range under the §3553(a)(5) factor. Specifically, the Commission recently set forth the following statement relevant to a young offender:

> A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation. The age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends to decrease with age. Age appropriate interventions and other protective factors may promote desistance from crime. Accordingly, in an appropriate case, the court may consider whether a form of punishment other than imprisonment might be sufficient to meet the purposes of sentencing[3].

(6) <u>The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct</u>

A sentence of 28 months of imprisonment, although a significant variance from the applicable guidelines range, would not present a danger of any unwarranted sentence disparity given the data provided in the JSIN section of the PSR. ECF 71 at 25. While 46% of similarly situated defendants received sentences within the Guidelines range, 45% received sentences below the range. Additionally, the data contained in the JSIN

---

[3] www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202405_RF.pdf

8

section of the PSR does not account for a defendant, like Justice, facing a 10-year consecutive, mandatory-minimum, prison sentence on a related case. Accordingly, a time served sentence here poses no risk of any unwarranted sentence disparity.

(7) <u>The need to provide restitution to any victims of the offense</u>

"…Restitution is due and owed to Victims 1 and 2. Neither the Government nor the case agent have provided loss information for the victims…the Court may hold an evidentiary hearing within 90 days after sentencing to determine restitution." PSR ¶145.

## VI.   CONCLUSION

Justice Jackson requests a sentence of 28 months (time served), followed by a term of supervised release, and, if warranted appropriate orders of restitution and/or forfeiture, and a mandatory $100 special assessment, which would be a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in the statute. §3553(a)(2). Justice requests that the sentence of imprisonment be imposed to run concurrent to the sentence imposed on Count 1 of Indictment 22 CR 641 (PMH). And, Justice further requests that the sentence of supervised release be imposed to run concurrent to the terms of supervised release imposed on Counts 1 and 3 of Indictment 22 CR 641 (PMH).

Respectfully submitted,

*Daniel Hochheiser*

Daniel A. Hochheiser

Cc: all counsel via ECF